IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NAM BRYAN TRAN, §
 §
    Petitioner, §
 §
v. § No. 4:17-CV-330-Y
 §
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
 §
    Respondent. §

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Nam Bryan Tran, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. Factual and Procedural History**

On April 8, 2013, in the 371st Judicial District Court, Tarrant County, Texas, Case No. 1277354D, a jury found Petitioner guilty of murder and assessed his punishment at 99 years' confinement. (Clerk's R. 88, doc. 10-14.) His conviction was affirmed on appeal and his petition for discretionary review was refused by the Texas Court of Criminal Appeals. (Docket Sheet 2, doc. 10-2.) Petitioner also filed a state habeas-corpus application

challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order. (Action Taken, doc. 11-15.)

The state appellate court summarized the evidence at trial as follows:

> The mood was festive as celebrants left a July 21, 2011, wedding reception to continue the festivities at Saigon Nites, an Asian nightclub in Arlington. Nguyen, who had flown home from New Jersey the previous day to attend the wedding of his friend, was among the celebrants. The nightclub had placed several tables together when it was alerted that a group from the wedding was expected so that the wedding guests could sit together and socialize.
>
> Tran, who was not among the wedding celebrants, visited Saigon Nites that same evening with friends. After arriving at the nightclub, Tran walked around, visited, and spoke with his friend Tinh Pham. Tran then sat down at the end of a group of tables occupied by the wedding celebrants. Although he was seated next to Nguyen, Tran did not know him. Tran remembers Nguyen asking him if his name was Birdie. Tran then leaned in towards Nguyen, and the two spoke. Within seconds of leaning in to speak with Nguyen, Tran was knocked to the ground by Nguyen's punch. Tran does not recall saying anything that would have provoked this response.
>
> After the attack by Nguyen, Tran reports that he was attacked by one or more men. Frightened, Tran ran in front of the stage area and pulled an AMT handgun from his pocket. Tran testified that he pulled his gun before there were further threats from Nguyen. He conceded that, at the time he pulled his gun, he was the only one displaying deadly force.
>
> Kite, a friend of Tran's, pulled Tran towards the game room. As he was being pulled, Tran fell. As a scare tactic, Tran fired one shot in the air. He did this not because he feared for his life; instead, according to Tran, he intended to scare Nguyen. After he fell, Tran recalls looking directly at Nguyen, who was running at him with a chair, looking as though he intended to harm Tran. Believing that Nguyen was going to strike him with the chair and taking into account Nguyen's group of friends, Tran saw that he was outnumbered and was frightened that he would be seriously injured or killed. Tran yelled at Nguyen to stay back. Tran then pointed his

gun at Nguyen, who was facing him, and fired.

After the initial shot, Nguyen fell to his right and ceased his charge on Tran. Tran later testified that he shot at Nguyen several times as Nguyen ran toward him, and saw him fall to the floor after he finished shooting. Tran denied shooting Nguyen in the back.

Pham—a friend of Tran's—in large part verified most of Tran's version of events. Although he did not see the blow that initiated the confrontation between Tran and Nguyen, Pham came to Tran's defense when he saw Tran on the floor with Nguyen and Loc Tran [Nguyen's brother-in-law] stomping on him. After Pham helped Tran to break free of the fight, Tran began backing up towards the restroom area. By that time, the fight had been broken up. Nonetheless, Nguyen chased Tran down. Pham next witnessed Tran holding a gun with Nguyen standing approximately five feet in front of Tran holding a chair. When Nguyen ran at Tran with the chair, Tran fired at Nguyen. At that point, Pham ducked for cover and did not see anything else. A chair with blood spots, split wood, and one broken leg was found in the alcove leading to the restrooms.

Other witnesses to the event tell a different story. Kathy Nguyen [a friend of Nguyen], who was transported from prison to testify at trial, testified that she, Nguyen, Tran, Loc, Pham, a person named "Bi," and Michael Tran were all seated together at a table inside the nightclub. Although Tran and Nguyen were seated next to each other, she did not see the two arguing while they were seated at the table. When Tran touched Nguyen on the shoulder, Nguyen pushed or punched Tran. After the two began to fight, Kathy assumed Loc stopped the fight. After the scuffle ended, Nguyen walked by the stage, where Kathy was standing. She then felt Tran nudge her, and she saw a gun in his hand. As Kathy was standing between Tran and Nguyen, Tran raised his gun and shot. Although it did not appear that Tran was shooting at Nguyen, Nguyen was lunging at Tran when the initial shot was fired. The scene then became chaotic, with people ducking and running. Nguyen ran towards the game room, where Tran chased him down and shot him. At least five or six shots were fired, and when he was hit in the back, Nguyen fell to the floor. After Nguyen collapsed, Tran quit shooting and fled the scene. The entire incident occurred within approximately ten minutes of Tran's arrival at the club.

Loc was seated next to Pham at Saigon Nites on the

3

evening of the shooting. Although Loc did not see
Nguyen's initial attack on Tran, when he saw the two
fighting, he ran over to try and stop it. Loc grabbed
Nguyen by the elbow and tried to pull him away from Tran.
He denied kicking or hitting Tran after Tran was down.
Pham then grabbed Loc and held him back. While Pham was
still holding Loc, Tran pulled a gun from his pocket and
shot Nguyen, who was standing two feet from Tran. He
denied witnessing Nguyen attack Tran with a chair.

Dr. Lloyd White, a pathologist employed by the
Tarrant County Medical Examiner, performed an autopsy on
Nguyen's body. Nguyen suffered six gunshot wounds, two of
which were fatal. The first fatal wound entered Nguyen's
upper mid-back near the base of the neck. White opined
that Nguyen might have been lying face down on the floor
when this wound was inflicted because the projectile did
not exit the body but was recovered under the skin on the
front of the abdomen. Conversely, the projectile may not
have exited simply because it slowed and stopped at that
point. The second fatal wound entered the back of the
right shoulder. The projectile causing this wound exited
the body on the lower right front of the abdomen. Both of
these wounds were back entrance wounds which generally
traversed from back to front and downward through
portions of the chest and abdominal cavities. Although
the two fatal wounds entered Nguyen's back, White could
not determine if these wounds were inflicted while Nguyen
was leaning forward. Nguyen also suffered defensive
wounds to his hand and forearm caused by bullet
fragments. These wounds likely resulted from Nguyen
raising his arms to defend or block against the gunshots.

After the shooting, Tran left the nightclub and fled
to his apartment in a car-jacked vehicle. He then drove
to Houston with his girlfriend, where he remained for
several months until his arrest on April 3, 2012,
following a routine traffic stop.

(Mem. Op. 4-8, doc. 10-3 (footnotes omitted).)

## II. Issues

In one ground for relief, Petitioner claims he received
ineffective assistance of trial counsel. (Pet. 6, doc. 1.)

## III. RULE 5 STATEMENT

4

Respondent believes that Petitioner's state-court remedies have been exhausted and that the petition is neither time-barred nor successive. (Resp't's Answer 6, doc. 13.)

**IV. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF**

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the AEDPA, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. *Valdez v. Cockrell,* 274 F.3d 941, 948 n. 11 (5th Cir. 2001). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

## V. Discussion

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying

this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court set out in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of Petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

7

Petitioner claims his trial counsel, James Shaw, was ineffective by failing to file a motion in limine and/or object at trial to repeated references to the deceased as the "victim" by the prosecutor and witnesses and to the prosecutor's impeachment of him with inadmissible felony-drug convictions not involving moral turpitude. (Pet. 6, doc. 1.) In an affidavit filed in the state habeas proceedings, counsel responded to the allegations, in relevant part, as follows:

> The record reflects that three witnesses to the incident referred to the deceased as the "victim" during their testimony. Tran testified that he shot the deceased in self-defense after the deceased punched him for no apparent reason. The court instructed the jury on self-defense. I did not consider filing a motion in limine to exclude references to the deceased as the "victim" or objecting to this testimony. Now that I have considered the issue, I believe that references by prosecution witnesses to the deceased as the "victim" communicate the inadmissible opinion that the killing was not legally justified. My failure to file a motion in limine and object was not strategic. In retrospect, I should have filed the motion and, if necessary, objected to the testimony.
>
> . . .
>
> The record reflects that the prosecutor impeached Mr. Tran on cross-examination with his convictions for possession of four to 200 grams methamphetamine in 2008 and less than one gram of a controlled substance in 2004. I did not file a motion to exclude the drug convictions or object on the basis that they were not relevant to credibility and were unduly prejudicial. I did not consider filing this motion because I did not know that the court could exclude prior convictions that are irrelevant to credibility under <u>Theus v. State</u> and that a prior drug conviction is inadmissible where the defendant is being tried for a crime of violence under <u>Hankins v. State</u>. My failure to file a motion in limine was not strategic. In retrospect, I should have

8

researched the issue, filed the motion and, if necessary, objected to the attempted impeachment.

(State Habeas R. 71-73, doc. 11-19.)

Applying the *Strickland* standard and relevant state law, the state habeas judge, who presided over Petitioner's pretrial proceedings, voir dire, a portion of the trial on the merits, and the trial on punishment, entered the following factual findings and legal conclusions (all spelling, punctuation, and/or grammatical errors are in the original):

**FINDINGS OF FACT**

6. [Petitioner] complains that counsel was ineffective because he did not object or file a motion in limine to limit references to the deceased as the "victim."

. . .

8. Hon. Jim Shaw states that he should have filed a motion in limine and objected to the use of the term "victim."

9. Hon. Shaw states that his failure to file a motion in limine or object to the use of the term "victim" was not strategic.

10. Hon. Shaw does not admit that his representation was deficient because he did not object or file a motion in limine regarding the use of the term "victim."

11. During its cross-examination of [Petitioner], the State established that [Petitioner] had twice been convicted of felony narcotics offenses.

12. Hon. Shaw states that he did not file a motion to exclude the drug convictions or object on the basis that the convictions were irrelevant to credibility and were unduly prejudicial.

9

13. Hon. Shaw admits that he didn't know about the cases which held that drug convictions are irrelevant as to credibility.

14. Hon. Shaw states that his failure to file a motion in limine was not strategic.

15. Hon. Shaw states that he should have researched the issue and filed a motion or objected to the attempted impeachment.

16. The use of the prior drug convictions was not for impeachment.

17. [Petitioner]'s most recent conviction occurred on August 15, 2008, less than five years prior to the date of his April 5, 2013, testimony.

18. Continuing its questioning, the State asked [Petitioner] whether he understood that his status as a convicted felon prohibited him from owning a firearm.

19. [Petitioner] answered affirmatively that he knew he was prohibited from owning a firearm due to his convicted felon status.

20. Hon. Shaw objected to the relevancy of whether [Petitioner] knew he could own a gun as a convicted felon.

21. After the State asked [Petitioner] about his two prior drug convictions, Hon. Shaw moved for a motion in limine before the State went into the extraneous offenses.

22. The State argued at trial regarding the admissibility of the extraneous offenses as follows:

> The line of questioning him with the firearm as a convicted felon goes to the reasonableness of his self-defense. He wasn't even supposed to have a gun to begin with, and it's contextual as part of the facts in the case from the standpoint of having a firearm there.
>
> . . .

The self-defense, if it was reasonable, then I
think that all of that goes into the
reasonableness of his actions in his defense.

23. This Court overruled Hon. Shaw's relevancy
objection and granted his motion in limine
"regarding anything else."

24. This Court found "what we have right now is felony
convictions and something that is contextual."

25. This Court found that whether [Petitioner] knew it
was illegal for him to have a gun in the bar was
relevant because

[i]f he does know and then he behaved in
violation of it I think is something that that
jury might consider in evaluating his self-
defense claim.

26. [Petitioner] argued to the jury that he killed the
victim in self-defense.

27. The jury charge given in this case required the
jury to determine whether [Petitioner] acted
"reasonably" on the night in question.

28. Both the State and [Petitioner] touched upon the
"reasonableness" of [Petitioner]'s actions on the
night in question during closing arguments.

. . .

30. The fact that [Petitioner] was a convicted felon
was relevant to whether his conduct of shooting the
victim was reasonable under the circumstances.

31. There is no evidence that a reasonable likelihood
exists that the outcome of the proceeding would
have been different but for the alleged misconduct.

### CONCLUSIONS OF LAW

7. An attorney is not ineffective for not objecting or
filing a motion in limine to the use of "victim" by
the State or witnesses.

8. [Petitioner] has failed to demonstrate that

11

counsel's representation fell below an objective standard of reasonableness because counsel did not object to the State's and witnesses' use of the term "victim."

9. Relevant evidence is evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

10. Irrelevant evidence is inadmissible.

11. Texas law forbids a convicted felon from possessing a firearm at his residence within five years from the date of his release from confinement or community supervision.

12. A convicted felon may never possess a firearm away from his place of residence.

13. The "intent of the statute proscribing possession of firearms by convicted felons is to keep violent offenders from going about with firearms."

14. A person who uses deadly force in self-defense is entitled to a presumption that such use of deadly force was immediately necessary and reasonable if certain statutory requirements are met. But, the entitlement to such a presumption does not apply if that same person was otherwise engaged in criminal behavior.

15. On appeal, the Sixth Court of Appeals held as follows

    The State argued, and we agree, that [Petitioner]'s decision to bring a firearm into the club when he knew he was prohibited from owning such a weapon was relevant to the question of whether his conduct in shooting Nguyen was reasonable under the circumstances.

16. The fact that [Petitioner] was a convicted felon was relevant to whether his conduct of shooting the victim was reasonable under the circumstances.

17. As [Petitioner] knew he illegally possessed a

firearm on the night in question due to his prior felonies, the fact that [Petitioner] had prior felonies was directly related to the potential jury charge issue of whether [Petitioner] was entitled to a presumption instruction under the law regarding his right to resort to self-defense.

18. [Petitioner]'s prior felony convictions were relevant and admissible.

19. [Petitioner] has failed to demonstrate that counsel's representation fell below an objective standard of reasonableness because counsel did not file a motion against or objecting to the admissible evidence of [Petitioner]'s prior felony convictions.

20. [Petitioner] has failed to prove that counsel's representation fell below an objective standard of reasonableness.

21. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

22. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffective claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

23. [Petitioner] has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel filed a motion in limine to the references by the State and the witnesses to the deceased as the "victim."

24. [Petitioner] has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the references by the State and the

>     witnesses to the deceased as the "victim."
>
> 25. [Petitioner] has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel objected to the State presenting evidence of [Petitioner]'s prior felony drug convictions.
>
> 26. [Petitioner] has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel filed a motion to prohibit the State from presenting evidence of [Petitioner]'s prior felony drug convictions.
>
> 27. [Petitioner] has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would be different.
>
> 28. [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

(State Habeas R. 119-27 (citations and record references omitted).)

Petitioner has not brought forth clear-and-convincing evidence to rebut the state court's factual findings; thus, the findings are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002). Applying the appropriate deference, and having independently reviewed Petitioner's claims in conjunction with the state-court records, it does not appear that the state courts' application of *Strickland* was objectively unreasonable.

Petitioner argues that the state courts' decision regarding the use of the term "victim" is unreasonable because it is contrary to state law; because it is improper to use the term "victim" where

14

there is a dispute as to whether a crime was committed; and because the prosecutor's and witnesses' use of the term "improperly communicated their opinions that petitioner did not act in self-defense." (Pet'r's Br. 11, doc. 2.) Petitioner also argues that he "need not show a reasonable probability that, but for counsel's errors, he would have been acquitted. 'The results of a proceeding can be rendered unfair, and hence, the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.'" (Id. at 9.)

To establish that counsel is deficient for failing to object, the objection must have merit. *Ries v. Quarterman,* 522 F.3d 517, 530 (5th Cir. 2008). A federal court must defer to a state court's factual determinations as well as its interpretation of its own law. 28 U.S.C. § 2254(e)(1); *McKay v. Collins,* 12 F.3d 66, 69 (5th Cir. 1994). The state habeas court cites numerous state cases in support of its conclusion that counsel is not ineffective for not filing a motion in limine or objecting to the use of the term "victim" by the state or witnesses. (State Habeas R. 124, doc. 11-19.) Nor does this Court find any federal cases holding that trial counsel's failure to object to the use of the term constituted deficient performance or resulted in prejudice or unfairness at trial. A "victim" is "[a] person harmed by a crime, tort, or other wrong." BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, reference to Nguyen as the "victim" was accurate. Nguyen died as the result of

15

gun shot wounds, and Petitioner admitted to shooting him. The only question was whether Petitioner shot him in self-defense. *See also Tollefson v. Stephens,* Nos. SA:14-CV-144-DAE & SA:14-CV-171-DAE, 2014 WL 7339119, *18 (W.D.Tex. Dec. 23, 2014) (providing the term is commonly used "in a neutral manner to describe the events in question" and "carries no legal significance, and, in context, carr[ies] no implication that the person using [the term] has an opinion one way or the other about the guilt of the defendant"). Counsel is not ineffective by failing to make futile motions or frivolous objections. *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998).

Furthermore, as the state habeas court observed, the evidence of Petitioner's prior felony drug convictions was relevant to his defensive theory. *See Krajcovic v. Director, TDCJ-CID,* No. 4:14-CV-554, 2017 WL 3970167, at * 2 (E.D.Tex. Sep. 7, 2017). *See also* TEX. PENAL CODE ANN. § 9.31(a)(3) (West 2011) (providing that use of force is presumed to be reasonable if the actor is not otherwise engaged in "criminal activity . . ."). Nevertheless, under Texas law, evidence that a witness has been convicted of a felony *or* a crime of moral turpitude is admissible for impeachment purposes. *See* TEX. R. EVID. 609(a)(1)-(2). Thus, a defendant who testifies places his credibility at issue and may be impeached like any other testifying witness. *Geuder v. State,* 142 S.W.3d 372, 375 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd). Because evidence of Petitioner's prior felony convictions was admissible once he took

the stand, and the state had given notice of its intent to use the convictions at trial, any objection would have been futile. As noted, counsel is not ineffective by failing to make futile motions or frivolous objections. *Green,* 160 F.3d at 1037, 1042.

## VI. Conclusion

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the [Petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his constitutional claims. Therefore, a certificate of appealability should not issue.

SIGNED May 14, 2018.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE